# In the District Court of the United States
## For the District of South Carolina
### CHARLESTON DIVISION

RECEIVED
CLERK OF COURT
2005 APR -1  P 4: 03

Danny Johnson,  )  Civil Action No. 2:04-0463-18BG
  )
  Plaintiff,  )
  )
v.  )  **REPORT AND RECOMMENDATION**
  )  **OF THE MAGISTRATE JUDGE**
City of Goose Creek and City of Goose  )
Creek Police Department,  )
  )
  Defendants.  )
_____ )

## I. INTRODUCTION

The Plaintiff, Danny Johnson ("Plaintiff" or "Johnson"), filed this action on February 13, 2004 against City of Goose Creek and City of Goose Creek Police Department, claiming racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(g), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 2000e, et seq., and submit findings and recommendations to the District Court.

## II. FACTS

### A. Background to Plaintiff's Claim of Discrimination

The Plaintiff and the Defendant[1] have stipulated to the following facts in their Joint Factual Brief [26-1] filed with the court, which are set forth below:

---

[1] The City of Goose Creek Police Department is not a separate or distinct political entity or subdivision, but instead is a part of, and operated by the City of Goose Creek. See Memorandum in Support of Motion for Summary Judgment [21-1] at p. 4. Accordingly, the proper Defendant in this case is the City of Goose Creek, and it will be referred to herein as the Defendant.

The Plaintiff is an African-American male. In 2002, the Plaintiff was an at-will employee with the City of Goose Creek Police Department and held the position of Patrol Division Lieutenant. The Plaintiff was first hired as a patrol officer with City of Goose Creek Police Department in 1979. Chief Harvey M. Becker ["Chief Becker"] became Police Chief in 1989. Prior to becoming Chief of Police, he was the Plaintiff's immediate supervisor when he was the Patrol Division Commander. In 1989, Chief Becker promoted the Plaintiff to the lieutenant position that he had formerly held. Chief Becker made the decision to offer that promotion to the Plaintiff, and that promotion was approved at that time by Dermis Harmon, who was and still is the City Administrator ["Administrator Harmon"]. During the years that he supervised the Plaintiff, Chief Becker had given the Plaintiff many favorable recommendations. Chief Becker had exhibited no discrimination against the Plaintiff.

In 2002, the Plaintiff sought a promotion to the position of Assistant Chief of Police with the City of Goose Creek Police Department. The position of Assistant Chief of Police was created in 1997. Captain Yvonne Turner, who is an African-American female, was selected at that time to fill the position. The Assistant Chief fulfilled numerous roles within the Police Department with the primary emphasis on administrative duties and coordinating the Department's attempt to obtain and retain accreditation with the Commission on Accreditation for Law Enforcement Agencies ("CALEA").

Captain Yvonne Turner retired effective, April 11, 2002, and the City immediately posted the position internally and advertised the position for outside applicants. The minimum posted job qualifications included a Bachelor's Degree. The Plaintiff met the minimum qualifications for the Assistant Chief of Police position. On June 14, 2002, then-Lieutenant Tracy Tokarsky (Tokarsky") [a white male] submitted his resume with a written request to the City Administrator

for a waiver of the requirement of a Bachelor's Degree. Tokarsky was working on his degree and was only several courses from completing his degree. City Administrator Harmon granted the waiver of the educational requirement because Tokarsky was in the final stages of his degree program, had worked the Goose Creek Police Department enforcement experience, and already occupied a command position with the Department.

A total of twenty applications for the Assistant Chief position were received. Of those applications, sixteen met the minimum qualifications for the position. The sixteen applications were reviewed by Joellyn Robbins, who is the City Human Resources Director ("HR Director Robbins"), and Chief Becker. A decision was made to interview nine candidates, which included the Plaintiff and Tokarsky. Chief Becker assembled an interview panel consisting of himself, City Admninistrator Harmon, HR Director Robbins, and Captain Yvonne Turner to interview the nine finalists.

Each of the nine finalists was interviewed. The Plaintiff was permitted to interview early in order to accommodate his scheduled attendance at the FBI Academy in Virginia. After the interview process was completed, the panel members discussed the relative qualifications, skills, strengths and weaknesses of each of the candidates. The panel members were then requested to rank their top five. Tokarsky was the first choice of three of the four panel members. City Administrator Harmon's first choice was an officer from the Town of Mt. Pleasant, although Tokarsky was his second choice. The Plaintiff was in the top five of only one panel member, that being Chief Becker, who ranked him fifth. Following the completion of the interview process, Chief Becker made the decision to offer the Assistant Chief position to Tokarsky. That decision was approved by City Administrator Harmon. The Assistant Chief position was offered to Tokarsky, who accepted the promotion. In their depositions and affidavits, the four members of

the interview panel have articulated legitimate, nondiscriminatory reasons for promoting Tracy Tokarsky and not the Plaintiff to the Assistant Chief position.

The promotion of Tokarsky to the Assistant Chief position created a vacancy for the Special Operations Lieutenant. The Plaintiff, who had been the Patrol Division Lieutenant, requested a lateral transfer into the Special Operations Lieutenant position formerly held by Tokarsky. That request was granted by Chief Becker.

The Plaintiff requested and received information regarding the available grievance procedures and was well aware of his grievance rights. The Plaintiff did not file a grievance regarding the decision not to promote him to the Assistant Chief of Police position. The first that the City of Goose Creek learned that the Plaintiff was claiming that race was a factor in the decision to promote Tokarsky was when the City was advised of the EEOC charge dated April 14, 2003. The EEOC ultimately investigated and issued a Dismissal and Right-to-Sue letter on October 22, 2003. [26-1]

## III. PROCEDURAL HISTORY

Plaintiff initially filed this action in the Court of Common Pleas for Berkeley County, alleging that the Defendant violated Title VII by promoting Tokarsky, a white male who did not have a college degree, to the position of Assistant Chief, instead of promoting Plaintiff, a black male with a college degree. Plaintiff also set forth an action for breach of contract based upon (1) Defendant's written policies that prohibited discrimination based on race; and (2) Defendant's written policy which stated that "[i]f an individual within the city is qualified and is acceptable to the Department Manager and the City Administrator, the employee will be promoted to that position."[2]

---

[2]    See Complaint at ¶¶ 42-49.

On February 13, 2004, the Defendant filed a Notice of Removal of Plaintiff's complaint from State Court by Defendant and filed its Answer. [1-1; 4-1] Discovery was commenced by the parties; thereafter, on December 6, 2004, the Defendant filed a Motion and Memorandum in support of Summary Judgment. [20-1; 21-1] The undersigned issued its Order for a Joint Factual Brief [22-1] on December 10, 2004, and on December 29, 2004, Plaintiff filed a Response to the Defendant's Motion for Summary Judgment. [25-1] The parties filed their Joint Factual Brief [26-1] on January 10, 2005; thereafter, the Defendants filed a Reply Memorandum. [27-1] Accordingly, this matter is ripe for disposition on Defendant's Motion for Summary Judgment.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Zahodnick v. International Business Machines, Corp., 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that specific, material facts exist which give rise to a genuine issue which requires trial. Celotex, 477 U.S. at 324; see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Furthermore, to avoid summary judgment, the non-moving party must establish a triable issue as to each essential element of his claim, otherwise summary judgment must be entered. Celotex, 477 U.S. at 322-34. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. Anderson v.

Liberty Lobby Inc., 477 U.S. 242, 250 (1986); Sylvia Development Corp. v. Calvert County, Md. 48 F.3d 810, 817 (4th Cir. 1995).

A trial judge faced with a summary judgment motion "must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson, 477 U.S. at 252. Thus, the moving party can bear his burden either by presenting affirmative evidence, or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. Celotex Corp., 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. Zahodnick, 135 F.3d at 913. As a general rule, the non-moving party must respond to a motion for summary judgment with affidavits, or other verified evidence, rather than relying on his complaint. Celotex Corp., 477 U.S. at 324; see also, Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

## V.  ANALYSIS OF PLAINTIFF'S CLAIMS

### A. Plaintiff's Cause of Action Under Title VII.



Plaintiff alleges that he was discriminated against on the grounds of his race in violation of Title VII. as a result of the Defendant's decision to promote Tokarsky, a white male without a college degree, as Assistant Chief of Police, instead of promoting Plaintiff, a black male with a college degree.

For Plaintiff to prevail in his Title VII action, he must first present a *prima facie* case of discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). Plaintiff may prove his *prima facie case* of racial discrimination by direct or circumstantial evidence. In

the absence of direct evidence, as in the present case, Plaintiff's claim must be analyzed under the framework as first established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this paradigm of analysis, Plaintiff must first establish a *prima facie* case of race discrimination. Then, the burden shifts to the Defendant to rebut the presumption of discrimination and set forth legitimate, nondiscriminatory reasons for its decisions. After Defendant has articulated its legitimate, nondiscriminatory reasons, the burden shifts back to Plaintiff to come forward with evidence that the Defendant's asserted reasons are a pretext for its true discriminatory motives, and that the Defendant's actions were based upon Plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802-805; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

To establish a *prima facie* case of failure to promote on the basis of race, Plaintiff must establish that he (1) is a member of a protected class; (2) applied for the position in question; (3) was qualified for the position; and (4) was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 189 (4th Cir. 2004), *citing* Amirmokri v. Baltimore Gas and Elec. Co., 60 F.3d 1126, 1129 (4th Cir.1995). An employer may rebut a *prima facie* case by articulating legitimate, nondiscriminatory reasons for its actions, such as demonstrating that the person promoted was better-qualified for the position. McDonnell Douglas Corp., 411 U.S. at 800-803. Assuming the employer meets this burden of production, the plaintiff then must prove by a preponderance of the evidence that the employer's proffered reasons were a pretext for discrimination. Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1973). See also Honor, 383 F.3d at 189, *citing* Amirmokri, 60 F.3d at 1129 (The employee can then attempt to prove that the employer's articulated reason for promoting the successful applicant was pretextual).

Applying these criteria to the facts of this case, Plaintiff is an African American, and thus is a member of a protected class. Plaintiff applied for the position in question. With respect to whether Plaintiff was qualified for the position, which required a Bachelor's Degree, Plaintiff argues that he was qualified because he had a college degree and a Master's Degree in Police Administration.[3] Plaintiff argues by Brief that Tokarsky "did not have the minimum requirements of the Assistant Chief position, but, upon his request, was granted a waiver for this."[4] According to the Joint Stipulated Facts, City Administrator Harmon granted the waiver of the educational requirement because Tokarsky was in the final stages of his degree program, had worked the Goose Creek Police Department enforcement experience [sic], and already occupied a command position with the Department. Tokarsky, therefore, was qualified for the position because the educational requirement was waived.

With respect to the fourth part of Plaintiff's *prima facie* case, the Defendant appears to concede, for purposes of its Motion for Summary Judgment, that Plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.[5] Defendant contends that even if it is assumed that Plaintiff can establish a *prima facie* case, the Defendant's decision to promote Tokarsky instead of the Plaintiff, and the seven other candidates who interviewed, was based on legitimate, nondiscriminatory reasons. Significantly, Plaintiff stipulated to the fact that "[i]n their depositions and affidavits, the four members of the interview

---

[3]   See Plaintiff's Response to Motion for Summary Judgment [25-1] at p. 6.

[4]   See Plaintiff's Response to Motion for Summary Judgment [25-1] at p. 6.

[5]   See Defendant's Memorandum [21-1] at p. 5.

Page 8 of 11

panel have articulated legitimate, nondiscriminatory reasons for promoting Tracy Tokarsky and not the Plaintiff to the Assistant Chief position."[6]

Because the Plaintiff and the Defendant have agreed that the Defendant has produced legitimate reasons for the action. Thus, the undersigned concludes that the Defendant's reasons for hiring Tokarsky instead of Plaintiff are true.[7]

At this stage, the burden shifts back to the Plaintiff to show the Defendant's proffered reason is pretextual. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-147 (2000). Plaintiff argues that Chief Becker was the *de facto* decisionmaker and that Chief Becker "had engaged in racist commentary in the workplace, using the term 'nigger' in Plaintiff's presence on several occasions in the past."[8] On the contrary, Plaintiff testified in his deposition of one instance, in 1981, at which time Chief Becker immediately apologized to the Plaintiff; according to Plaintiff, "we made up and we, we, we, we addressed the issue right then."[9] The undersigned does not find that this comment, made over twenty years ago, is sufficient to show racial animus on the part of Chief Becker. In addition, Plaintiff has stipulated to the fact that "Chief Becker had exhibited no discrimination against the Plaintiff"[10] and the record reflects that Chief Becker had promoted Plaintiff to Lieutenant over the Patrol Division in 1989, and had given Plaintiff numerous favorable recommendations throughout the years. Finally, Plaintiff's argument that Chief Becker was motivated by racial animus is further weakened by the fact that



---

[6]  See Joint Factual Brief [26-1] at pp. 3-4, ¶ 22.

[7]  Compare with Reeves, wherein the Supreme Court held that a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. Reeves, 530 U.S. at 148.

[8]  See Plaintiff's Response [25-1-] at p. 10.

[9]  See Plaintiff's Dep. at 107.

[10] See Joint Factual Brief [26-1] at p. 2, ¶ 5.

Chief Becker had hired a black female (Yvonne Turner) in 1997 as Assistant Chief, with City Administrator Harmon's approval. Significantly, Chief Becker and City Administrator Harmon are the same decision makers as were involved in the decision to promote Tokarsky instead of Plaintiff. The evidence before the court permits it to draw the inference that the Defendant's reasons for not hiring Plaintiff are not pretextual, but were based upon legitimate, nondiscriminatory reasons. Indeed, as the Fourth Circuit has observed, "employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing." Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991).

It is well established that not every action taken by an employer adverse to the aggrieved party amounts to an adverse employment action within the scope of Title VII. See Von Gunten v. Maryland, 243 F.3d 858, 866-67 (4th Cir.2001); Page v. Bolger, 645 F.2d 227, 233 (4th Cir.1981) (en banc). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing, 530 U.S. at 153. To overcome a motion for summary judgment in such a case, a plaintiff must provide direct or circumstantial evidence "of sufficient probative force" to show a genuine issue of material fact exists as to this question. Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir.1988). Where, as here, "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision," this court is led to the inexorable conclusion that there is no triable issue of fact. Reeves, 530 U.S. at 148. The Defendant should be granted summary judgment on Plaintiff's Title VII cause of action.

## B. Breach of Contract

Plaintiff has conceded his "third cause of action for breach of contract."[11] With respect to Plaintiff's other claim for breach of contract, Plaintiff has stipulated to the fact that he was an "at-will employee.[12] Therefore, Plaintiff does not have any contractual rights upon which he can base a cause of action for breach of contract. Thus, the Defendant should be granted summary judgment with respect to the contract claims asserted in Plaintiff's complaint.

## RECOMMENDATION

For the aforementioned reasons, **it is recommended that Defendant's Motion for Summary Judgment [20-1] be granted, and Plaintiff's Complaint [1-1] should be dismissed in its entirety.**

George C. Kosko
United States Magistrate Judge

April 1, 2005

Charleston, South Carolina

---

[11] See Palitniff's Response [25-1] at p. 16.

[12] See Joint Factual Brief [26-1] at p. 1, ¶ 2.