IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Danny Johnson, | ) | C/A No. 2:04-463-18 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| City of Goose Creek and | ) | |
| City of Goose Creek Police Department, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on recommendation of United States Magistrate

Judge George C. Kosko (the "magistrate judge") that defendants' motion for summary

judgment be granted. The record includes a Report and Recommendation from the

magistrate judge made in accordance with 28 U.S.C. § 636(b)(1)(B).

## I.  Background

On January 15, 2004, plaintiff Danny Johnson (plaintiff or "Johnson") filed a

complaint in the Berkeley County Court of Common Pleas (the "Complaint"), alleging

(1) race discrimination / wrongful denial of a promotion in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; (2) breach of contract (employee

handbook); and (3) breach of contract (personnel policy). On February 13, 2004,

defendants City of Goose Creek ("Goose Creek") and City of Goose Creek Police

Department ("GCPD") removed the action to this court under 28 U.S.C. § 1441 based on

jurisdiction conferred by § 1331 of that same Title. On December 6, 2004, defendants

moved for summary judgment, and on December 29, 2004, plaintiff responded. On

January 10, 2005, upon order from the magistrate judge, the parties submitted a joint

factual brief, and defendants replied to plaintiff's response.

On April 1, 2005, the magistrate judge issued his Report and Recommendation (the "Report") setting out his reasons for recommending summary judgment in favor of defendants. On April 16, 2005, plaintiff objected to portions of the Report including its ultimate conclusion, and on April 18, 2005, defendants objected to certain findings but concurred in the magistrate judge's conclusion. This court heard argument on the objections on August 17, 2005 and now issues its ruling.

## II.  Standard of review

This court is charged with conducting a de novo review of any portion of the magistrate judge's Report to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendation contained in that Report. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. Thomas v. Arn, 474 U.S. 140 (1985). This court is not required to review under a de novo standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. Id. at 149-50. General objections will not suffice to obtain judicial review of a magistrate judge's findings. Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 508-09 (6th Cir. 1991).

Additionally, summary judgment is proper only when there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The moving party has the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir. 1984). Material

2

facts are those that might affect the outcome of the suit under the governing law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (U.S. 1986).  An issue is only

genuine if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  Id.  Consequently, in evaluating a motion for summary judgment, the

court views the record in the light most favorable to the nonmoving party.  Perini Corp.

v. Perini Constr., Inc., 915 F.2d 121, 123-124 (4th Cir. 1990).

### III.  Facts

Plaintiff and defendants filed a Joint Factual Brief but have, through various other

filings, alleged certain additional facts to be true.  The facts recounted below, unless

otherwise noted, are either undisputed or in the light most favorable to plaintiff as the

non-moving party.

Plaintiff is an African-American male and, when the GCPD first hired him as a

patrol officer in 1979, he was the only African-American officer in the department.

Harvey M. Becker ("Becker") was also a patrolman when plaintiff first began with the

GCPD, and plaintiff heard Becker use the racial epithet "nigger" on at least one occasion

in the early 1980s.[1]  In 1988, Becker was promoted to Patrol Division Commander (and

---

[1] Plaintiff's affidavit states that "in the 1980's, [Becker] had used the word 'nigger' on many occasions in my presence."  (Pl.'s Aff. at ¶ 72.)  In plaintiff's deposition however, he describes one particular incident in 1981 when Becker used the epithet then immediately apologized.  Plaintiff testified: "But we made up and we, we, we, we addressed the issue right then.  We took care of it and we had– that happened back in the eighties, '81, probably, and we never had– never brought up, never mentioned again, never was part of our discussion."  (Pl.'s Dep. at 107.)  As a result, it is unclear if plaintiff heard Becker use the slur after the 1981 incident.  It is undisputed that Becker never exhibited any signs of discrimination toward plaintiff after Becker achieved a supervisory position, i.e., after 1988, other than plaintiff's present allegations about the 2002 promotion described below.  (Joint Factual Brief at ¶ 5.)

3

given the rank of lieutenant) and became plaintiff's immediate supervisor.  Plaintiff had also applied for that position.  During the years that Becker supervised plaintiff, both as his lieutenant and later as Chief of Police, he gave plaintiff numerous favorable recommendations.

In 1989, Becker became the GCPD Chief of Police and, that same year, promoted plaintiff to the lieutenant position Becker vacated when he took the job as Chief.  At that time, lieutenant was the highest position under the Chief of Police.  Dennis Harmon ("Harmon"), who was and still is the Goose Creek City Administrator, approved Becker's decision to promote plaintiff.  In 1997, the GCPD created the position of Assistant Chief of Police as primarily an administrative position charged with the responsibility of obtaining and retaining accreditation for the GCPD with the Commission on Accreditation for Law Enforcement Agencies (CALEA).  Becker hired Captain Yvonne Turner ("Turner"), an African-American female, to be the first Assistant Chief of Police.[2]

Turner retired on April 11, 2002, and Goose Creek immediately posted the position internally and advertised the position to outside applicants.  The posted job qualifications required the minimum education level of a Bachelor's degree.  Plaintiff had obtained an Associate degree in Political Science from Baptist College in 1981, a Bachelor of Science degree in Criminal Justice from Baptist College in 1981, and a Master's degree in Police Administration from St. John's University in New Orleans in

---

[2] Plaintiff observes that one of Turner's parents was of African-American descent and one was Caucasian.  (Pl.'s Mem. in Opp'n at 4-5.)

4

1997.  Plaintiff applied to be Assistant Chief of Police, and the parties agree that he met the minimum qualifications for that position.

The only other officer in the GCPD with the rank of lieutenant, Tracy Tokarsky ("Tokarsky"), also applied for the position of Assistant Chief.  Tokarsky, a white male, had joined the GCPD in 1983 after having been a combat medic in the United States Army.  He was working toward his Bachelor's degree when the Assistant Chief position came open but did not have a degree at that time; therefore, he submitted his resume to Harmon with a written request for a waiver of the Bachelor's degree requirement. Harmon waived the educational requirement because Tokarsky was in the final stages of his degree program, had significant experience with the GCPD, and already occupied a command position with the GCPD.  There is no evidence that Becker played any role in Tokarsky obtaining the waiver and no evidence that Becker even knew Tokarsky was applying for the position until after Harmon had granted the waiver.

The GCPD received twenty applications for the position of Assistant Chief, and, of those twenty, sixteen met the minimum qualifications for the position, including plaintiff and Tokarsky (with the benefit of the waiver).  Joellyn Robbins ("Robbins"), the City Human Resources Director, and Becker reviewed the sixteen qualified applicants and chose nine to be interviewed, including plaintiff and Tokarsky.  Becker then assembled a four-person panel consisting of Harmon, Robbins, Turner, and himself to interview the candidates.  After the interviews, the panel members discussed the relative qualifications, skills, strengths, and weaknesses of each of the candidates, and Becker requested that each panel member rank the top five applicants.  Robbins, Turner, and

5

Becker all ranked Tokarsky as the top candidate for the job. Harmon ranked an officer from outside the GCPD first but ranked Tokarsky second. Becker ranked plaintiff as the fifth best candidate, but none of the other panel members even ranked plaintiff in their top five. Through deposition and affidavit, each panel member laid out legitimate, non-discriminatory reasons for assigning Tokarsky a high ranking and for assigning plaintiff a lower ranking. Becker decided to hire Tokarsky to be the Assistant Chief of Police; Harmon approved the decision; and Tokarsky accepted the promotion.

Tokarsky's promotion to Assistant Chief left open his former position of Special Operations Lieutenant, and plaintiff requested a lateral transfer from Patrol Division Lieutenant to that vacancy. Becker granted plaintiff's request. Plaintiff also requested and received information regarding the available grievance procedures and hence was aware of his grievance rights. Plaintiff did not file a grievance with the GCPD but instead filed a charge with the Equal Employment Opportunity Commission ("EEOC") on April 14, 2003. The EEOC ultimately investigated and issued a Dismissal and Right-to-Sue letter on October 22, 2003. Plaintiff subsequently filed the instant suit.

## IV. Analysis

Plaintiff originally filed suit against Goose Creek and the GCPD; however, the magistrate judge recognized that the GCPD is not a separate or distinct political entity or subdivision of Goose Creek but is instead a part of, and operated by, Goose Creek. Plaintiff did not object to this finding; accordingly, it seems that Goose Creek is the only proper defendant and will be referred to as such below.

The magistrate judge's Report recommends that defendant's motion for summary

judgment be granted and plaintiff's Complaint be dismissed in its entirety.  Defendant

does not object to the ultimate recommendation of the magistrate judge's Report or to the

analysis used to make that recommendation; however, defendant does object to the

finding that it conceded that plaintiff presented a prima facie case.  Plaintiff makes

several objections to the magistrate judge's Report, including (1) a categorical objection

to his use of the <u>McDonnell Douglas</u> test at the summary judgment stage of a mixed-

motive Title VII case; (2) his finding that Tokarsky was qualified for the Assistant Chief

position because the educational requirement was waived; and (3) his finding that

defendant's reasons for not hiring plaintiff were not pretextual, but were based on

legitimate, non-discriminatory reasons.  For the reasons set forth below, the court will

grant defendant's motion for summary judgment as to plaintiff's Title VII claim.

Additionally, plaintiff did not object to the magistrate judge's recommendation

that summary judgment be granted on his two causes of action for breach of contract.  As

the court is not obligated to review recommendations not under objection, it will grant

summary judgment to defendant on these causes of action as well.

### A.    Defendant's Objection

Defendant objects to the magistrate judge's finding that plaintiff presented a

prima facie case based on defendant conceding that plaintiff was rejected for the position

under circumstances giving rise to an inference of unlawful discrimination.  From

defendant's statement, "[a]ssuming that the Plaintiff can establish a prima facie case, the

City submits that the decision to promote Tracy Tokarsky instead of the Plaintiff (and the

other seven candidates) was based on legitimate, nondiscriminatory reasons," the

magistrate judge concluded that defendant had conceded the issue.  (R & R at 8.)

Defendant never conceded that the evidence gives rise to an inference of unlawful

discrimination against plaintiff but instead suggested that even if the magistrate judge

found that to be the case, the decision to promote Tokarsky instead of plaintiff was based

on non-discriminatory reasons, i.e., it was assuming a prima facie case in order to make

its argument under the <u>McDonnell Douglas</u> scheme.  As a result, the court rejects the

magistrate judge's finding that defendant conceded plaintiff had presented a prima facie

case.[3]

### B.    Plaintiff's Objections

Plaintiff lists three general grounds for objection to the Report; the court takes

each in turn.

### i.    Use of the <u>McDonnell Douglas</u> burden-shifting test

Plaintiff objects to the magistrate judge's use of the <u>McDonnell Douglas</u> burden-

shifting test at the summary judgment stage of what plaintiff terms a mixed-motive Title

VII case.[4]  He argues that "the McDonnell Douglas Shifting burden test should no longer

---

[3] At the August 17 hearing, plaintiff argued that defendant conceded that he had presented a prima facie case not by stating as much in its brief but by failing to challenge such a presentation in its argument for summary judgment.  In its memorandum in support of its motion, defendant makes the above assumption and then proceeds with its discussion of why there was no discrimination in this case.  The court took defendant's argument as applying to both plaintiff's prima facie case and to plaintiff's rebuttal of defendant's proffered nondiscriminatory reasons for its decision.  Defendant's lack of concession is further evinced by its objection to the magistrate judge's finding.

[4] Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race."  42 U.S.C. § 2000e-2(a)(1).

be considered a valid tool for analysis of Title VII cases at Summary Judgment." (Pl.'s Obj. at 1.) Because of an "absence of direct evidence," the magistrate judge analyzed the present case under the framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and found that framework to mandate the grant of summary judgment. (R & R at 6-7.) Plaintiff argues that the Supreme Court's decision in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), and the Fourth Circuit's subsequent opinion in Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 284 (4th Cir. 2004), stand for two propositions (1) that the McDonnell Douglas test should no longer be used in Title VII cases and (2) that a plaintiff need only present a prima facie case of discrimination in order to survive summary judgment. Both of these arguments have now been heard and specifically rejected by the Fourth Circuit in Diamond v. Colonial Life & Accident Ins. Co., No. 04-2093, 2005 U.S. App. LEXIS 15151, *1 (4th Cir. July 25, 2005).[5]

    The facts in Diamond bear such a striking resemblance to those in the present case that more than the normal degree of recounting is warranted. In Diamond, the plaintiff sued under Title VII, alleging that she was denied a promotion because of her race. Id. at *1. During the screening process for the position in question, a pair of supervisors interviewed six qualified candidates to fill the position– one of the supervisors being an African-American woman and the pool of applicants including the

_____

[5] The court commends plaintiff's attorney for being candid about the rejection of these propositions at oral argument, where he noted that he had argued them to the Fourth Circuit as the plaintiff's counsel in Diamond and that they had been recently rejected in that case by published opinion.

9

plaintiff and the candidate who ultimately received the job.  Id. at *3-4.  After each

interview, the supervisors rated the applicant on the basis of nine characteristics.  Id. at

*4.  The supervisors agreed that, based on their rating system, Diamond ranked fourth

among the applicants while the successful candidate ranked first.  Id.  The evidence

indicated that the supervisors believed Diamond had strong communication skills and

technical knowledge, but that she needed to develop "interpersonal skills, initiative,

coaching/counseling."  Id.  Although the successful candidate lacked a college degree

and the same amount of experience with the company as Diamond, the supervisors rated

her higher than Diamond in all nine categories, noting her particular strength in "decision

making, leadership, interpersonal skills, communication."  Diamond, 2005 U.S. App.

LEXIS 15151 at *4.  After the interviews, one of the supervisors spoke with the

managers of each of the top four applicants to discuss the applicants' ratings; none of the

managers disagreed with the rankings.  Id. at *4-5.  The company awarded the position to

the candidate who got the best reviews.  Id. at *5.

        Plaintiff in Diamond argued that "the Desert Palace holding means that all

employment discrimination cases should be analyzed as mixed-motive cases and that

Title VII plaintiffs can survive summary judgment simply by presenting a 'prima facie

case.'"  Id. at *16.  The Fourth Circuit succinctly stated that such "arguments are

meritless."  Id.  The appellate court next reaffirmed its holding from Hill, wherein it

recognized that, in the post-Desert Palace era, plaintiffs claiming to be victims of

discrimination can choose between two methods of proof when attempting to avoid

summary judgment (or may, as is usually the case with the law, choose both).  Hill, 354

10

F.3d at 284.  The first way is by demonstrating through direct or circumstantial evidence that race discrimination motivated the employer's adverse employment decision.  See id. Specifically, the Fourth Circuit noted that the employee "need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, so long as it was a motivating factor."  Id.  In other words, "it is sufficient for the individual to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons."  Id. (citing 42 U.S.C.A. § 2000e-2(m); Price Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989)).  If the plaintiff carries this burden, then the employer may prove that it would have made the same decision in the absence of the discriminatory motivation, which effectively limits the remedies available to the employee for the violation.  See 42 U.S.C. § 2000e-5(g)(2)(B) ("On a claim in which an individual proves a violation under section 2000e-2(m)" and the employer "demonstrates that [it] would have taken the same action in the absence of the impermissible motivating factor, the court . . . may grant declaratory relief, injunctive relief, and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m)," but "shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment.").  Under this method of proof, the limited affirmative defense described above would not, however, entitle a defendant to summary judgment.

The second method of averting summary judgment described in Hill and reaffirmed in Diamond– the same one contemplated by the magistrate judge's recommendation– is for a plaintiff to proceed under a "pretext" framework, where, after

establishing a prima facie case of discrimination, he demonstrates that the employer's stated reason for taking an adverse employment action is actually a pretext for discrimination.  Hill, 354 F.3d at 285 (citing Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas, 411 U.S. at 807).  To follow this path, a plaintiff must demonstrate that (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.  Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 544-45 (4th Cir. 2003) (citing Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998)); see also Hill, 354 F.3d at 285 (citing Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999)).  If plaintiff crosses that hurdle, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Hill, 354 F.3d at 285.  If the employer overcomes this minimal obstacle, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons "were not its true reasons, but were a pretext for discrimination."  Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

Turning back to Diamond, the Fourth Circuit then recognized that, in Title VII cases, the "prima facie case" is "a mechanism peculiar to the pretext framework" (the second framework described in Hill) and "is never by itself sufficient to permit a plaintiff to escape an adverse summary judgment ruling except in the rare instance when an 'employer is silent in the face of the presumption' it raises."  Diamond, 2005 U.S. App. LEXIS 15151 at *18-19.  In application, the court concluded that whether the plaintiff

was alleging "that race was <u>a</u> motivating factor or <u>the</u> <u>sole</u> reason for [the defendant's]

decision not to promote her, she ha[d] failed to raise a genuine issue of material fact as to

the ultimate question, i. e., whether [the defendant] intentionally discriminated against

her."  <u>Id.</u> at *21 (emphasis added).  The Fourth Circuit continued by assuming that the

plaintiff had made out a prima facie case and then observed:

> But a prima facie case alone is not sufficient to [avoid a]
> summary judgment ruling because [the defendant] has
> asserted legitimate, nondiscriminatory reasons for not
> promoting [plaintiff], specifically, that based on a
> multi-factored rating system, two managers . . . [including]
> an African-American woman– rated [the other applicant]
> the best candidate . . . .

<u>Id.</u> at *22-23.

From <u>Diamond</u>, it is clear that the Fourth Circuit does not agree with plaintiff's

interpretation of the import of <u>Desert Palace</u>.  It is further clear that the <u>McDonnell</u>

<u>Douglas</u> framework is still a viable tool for use in Title VII pretext cases and that, within

that framework, presenting a prima facie case is not sufficient to survive summary

judgment in the face of proffered legitimate reasons for the defendant's action.  Less

clear, at least in this case, is the difference between the first method of avoiding summary

judgment as laid out in <u>Hill</u> and what plaintiff has presently termed his prima facie case.

For that reason, there may be a risk that plaintiff could avoid summary judgment if he

proceeded under the first framework instead of insisting on proceeding under the second

framework and consequently having to argue for a change in that second framework.

<u>Desert Palace</u> prompted the Fourth Circuit to adopt a second option for Title VII

plaintiffs rather than to change the long-established <u>McDonnell Douglas</u> option.  An

13

example is helpful.  Assume that a hypothetical plaintiff can present a witness that heard a decision-maker say, "I'm going to hire A because he is the best candidate, but it is a bonus that A is white."  That is direct evidence that race was a motivating factor but would not have changed the outcome of the decision.  If that hypothetical plaintiff proceeds under the McDonnell Douglas framework, then he or she can make out a prima facie case and defendant can proffer its legitimate reason that A was the best candidate. Prior McDonnell Douglas case law (read narrowly) might say that plaintiff cannot then show that defendant's reason was "not true."  Plaintiff in this case is arguing that this roadblock violates Desert Palace, but what plaintiff neglects to acknowledge is that the hypothetical plaintiff could proceed down the first avenue for avoiding summary judgment and prevail.  In other words, the hypothetical plaintiff could raise a genuine issue as to the material fact that race was a motivating factor in the defendant's decision. Of course, circumstantial evidence tending to show the same thing would bring an identical result.

The import of the argument plaintiff chooses to make– that courts should change the McDonnell Douglas test rather than have dual avenues of avoiding summary judgment–[6] is not merely an argument for a simpler form of a test that functions the same: there is a meaningful difference between (1) making out a prima facie case that an employee was not promoted under circumstances giving rise to an inference of unlawful

_____

[6] It seems that courts could alter the McDonnell Douglas test to catch all impermissible discrimination, but then pretext cases would have to be separated from mixed-motive cases at some other point in the process, and it is not for this court to question that type of judicial policy decision.

discrimination and (2) raising a genuine issue of material fact that an employee was not promoted, at least in part, because of his race. The latter is a more onerous burden than the former but not impermissibly so under Supreme Court precedent. The governing law in this jurisdiction is that the latter is required to survive summary judgment under the first framework; the former is required to shift the burden to the defendant under the second framework.

In light of the forgoing and in light of the fact that the magistrate judge only analyzed plaintiff's case under the McDonnell Douglas framework, it seems prudent to insure that plaintiff is not denied a complete analysis simply because of confusing semantics.[7] After all, while "[t]hat which we call a rose by any other word smells as

---

[7] The court notes that while the magistrate judge used McDonnell Douglas, he also recognized that:

> "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." To overcome a motion for summary judgment in such a case, a plaintiff must provide direct or circumstantial evidence "of sufficient probative force" to show a genuine issue of material fact exists to this question.

(R & R at 10. Internal citations omitted.) This analysis seems to be giving plaintiff the benefit of the first method of avoiding summary judgment in a way consistent with the Fourth Circuit's practice. See Diamond, 2005 U.S. App. LEXIS 15151 at *21 ("summary judgment [is appropriate] because whether [the plaintiff] alleges that race was a motivating factor or the sole reason for [the defendant's] decision not to promote her, she has failed to raise a genuine issue of material fact as to the ultimate question, i. e., whether [the defendant] intentionally discriminated against her.") The court only elaborates for clarity and to reiterate that there is no longer a distinction between direct and circumstantial evidence cases under Title VII.

sweet,"[8] sometimes courts "really hate it when people get the words wrong."[9]

Initially, in defendant's objection to the magistrate judge's Report, it suggests in passing that plaintiff raised the mixed-motive issue late in the litigation process, i.e., only after defendant had moved for summary judgment. Defendant did not offer any other reason for arguing that plaintiff is not entitled to use the first method of avoiding summary judgment, and the court finds that plaintiff did not wait too late to avail itself of the mixed-motive proof scheme. If a plaintiff claims that all of a defendant's motivation for a particular action was discriminatory, it seems that the plaintiff is necessarily claiming that part of the defendant's motivation was discriminatory; therefore, defendant should have been on notice that plaintiff would raise the mixed-motive question. Additionally, the Fourth Circuit labels the two proof schemes as ways to "avoid summary judgment," so raising the issue for the first time in response to a motion for summary judgment would seem to be timely. In short, plaintiff is entitled to have his case analyzed under a mixed-motive framework– the first avenue of avoiding summary judgment described in <u>Hill</u>.

"Regardless of the type of evidence offered by a plaintiff as support for h[is] discrimination claim (direct, circumstantial, or evidence of pretext), or whether []he proceeds under a mixed-motive or single-motive theory, 'the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" <u>Hill</u>, 354 F.3d at 286 (citing

---

[8] William Shakespeare, <u>Romeo and Juliet</u> (Act II, scene ii).

[9] Crash Davis, <u>Bull Durham</u> (Metro Goldwyn Mayer 1988).

Reeves, 530 U.S. at 153).  To demonstrate this intent to discriminate, plaintiff must produce "sufficient evidence upon which one could find that 'the protected trait . . . actually motivated the employer's decision.'" Id. (citing Reeves, 530 U.S. at 141 (internal quotation marks omitted)).  Plaintiff asserts that race was a motivating factor in defendant denying plaintiff the promotion because Becker, who was the actual decision-maker, was motivated by racial bias, at least in part, when making the ultimate decision to promote Tokarsky, a white male who did not have a college degree, to the position of Assistant Chief, instead of promoting plaintiff, a black male with a college degree.  In order to survive summary judgment on this theory, however, plaintiff must present sufficient evidence that Becker harbored animus against him.  Plaintiff has simply failed to establish the requisite racial bias.

Plaintiff's claim that Becker harbored racial animus against black employees in general, and him in particular, is tenuous at best.  Plaintiff points to one particular incident, which occurred over twenty years ago, where Becker used a racial epithet and then apologized as evidence that Becker continued to harbor racial bias all the way up until plaintiff applied for the job in question in 2002.  In the interim, Becker promoted plaintiff to the highest position under his own, gave plaintiff many favorable recommendations, and– by plaintiff's own admission– never treated plaintiff with prejudice after the 1981 event.  Additionally, when the Assistant Chief position was created, Becker gave the job to a person of plaintiff's same race.  The evidence is insufficient for a reasonable jury to conclude that Becker harbored racial animus that was a motivating factor in choosing Tokarsky over plaintiff.  But there is still more evidence

17

that Becker based his decision on legitimate, nondiscriminatory reasons. The affidavit evidence of the panel members, which is strikingly similar to the evidence in <u>Diamond</u>, provides a solid foundation for Becker's decision independent of anything from Becker's past. It is undisputed that the only member of the selection panel (which included the outgoing African-American Assistant Chief) to rate plaintiff in the top five was Becker.

Plaintiff's only other evidence that race played a role in defendant denying him the promotion is that he had the requisite Bachelor's degree while Tokarsky did not. The problem with that argument is that Becker, the actual decision-maker, had no hand in waiving the degree requirement. Plaintiff has presented no evidence that Becker played any role in Tokarsky obtaining permission to apply for the position in spite of the fact that he did not have a Bachelor's degree. Instead Harmon, the same person that had approved plaintiff's latest promotion, was the person who granted Tokarsky permission to apply. Harmon did so because of Tokarsky's experience, both generally in the GCPD and specifically in command positions, and because Tokarsky was so close to obtaining his degree in any event.[10] While plaintiff argues that a waiver does not change the fact that Tokarsky did not have a degree, plaintiff ignores the fact that defendant came up with the criterion to begin with and is not prohibited from making exceptions to its own

---

[10] Plaintiff stated in his objection and in oral argument to the court that defendant had presented no evidence of any reason why Harmon had granted Tokarsky the waiver. Plaintiff's assertion ignores that he stipulated to the above reasons Harmon granted Tokarsky the waiver. (Joint Factual Brief at ¶ 13.) Plaintiff also argued that the grant of the waiver "could not have been because of [Tokarsky's] superior interview skills" because he had not interviewed yet. (Pl.'s Obj. at 8.) While a seemingly accurate observation, it does not further plaintiff's case because the waiver only allowed Tokarsky to begin the application process.

hiring criteria.[11]  If the exception rose to the level of permitting a reasonable jury to infer

discrimination, then plaintiff could rightfully use it to overcome summary judgment, but

the present exception falls far shy of that mark.

     In summary, one racial epithet twenty years in the past and one exception to a

hiring requirement (by a separate decision-maker) do not a race discrimination case

make.  This is especially true in light of otherwise clean records by both decision-makers

that contain objective evidence of racial neutrality.  For those reasons, plaintiff cannot

---

[11] Plaintiff cannot raise an inference of discrimination by discussing other hiring criteria.  As the Fourth Circuit has observed, "[an employee] may not choose the areas in which []he wants to compete with [another] for the promotion; those areas are for the employer's choosing."  Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 270 (4th Cir. 2005).  Additionally, plaintiff makes much of his qualifications as compared to Tokarsky's qualifications, but such comparisons are only relevant to the extent that they tend to show plaintiff was denied a promotion under circumstances giving rise to an inference of unlawful discrimination.  It has long been held that "Title VII does not ensure the best will be selected– only that the selection process will be free from impermissible discrimination."  Casillas v. United States Navy, 735 F.2d 338, 344 (9th Cir. 1984).  In that regard, plaintiff's comparisons are not on point.  Becker and the panel members explained their reasons for ranking plaintiff low and Tokarsky high, including their relative written and verbal communication skills and the relative content of their interviews.

    Finally, plaintiff repeatedly discusses his personal observations of Tokarsky both prior to and shortly after Tokarsky's promotion.  These observations cannot be relevant to the panel's rankings and ultimately Becker's decision unless plaintiff can show that the panel and Becker had some knowledge of what he claims to have observed and unless that knowledge further gives rise to an inference of unlawful discrimination in the context of the promotion.  Plaintiff only offers one example of Becker having knowledge of Tokarsky's alleged deficiency in the characteristics desired in the Assistant Chief position.  In that example, Becker allegedly asked plaintiff to deal with a citizen that had complained of Tokarsky's inattention to her prior complaints.  That incident does not show the type of discrepancy in plaintiff and Tokarsky's qualifications that would give rise to an inference of unlawful discrimination.  Furthermore, any events occurring after Tokarsky's promotion, including any role he might have played in the infamous Stratford High School raid, are irrelevant to the circumstances contemporary with the promotion.

survive summary judgment under a mixed-motive analysis.[12]

### ii.     Finding that Tokarsky was qualified for the position

Plaintiff next objects to the magistrate judge's finding that Tokarsky was qualified for the Assistant Chief position. To the extent that plaintiff suggests Tokarsky's perceived lack of qualifications for the Assistant Chief position gives rise to an inference of racial discrimination, the above analysis rejects that argument. To the extent that plaintiff suggests that he was more qualified than Tokarsky for the job, such a suggestion is simply irrelevant. For those reasons, any finding by the magistrate judge that Tokarsky was qualified for the position in question, proper or improper, was harmless.

### iii.     Finding that defendant established a non-discriminatory reason for adverse employment action

Finally, plaintiff objects to the magistrate judge's finding that defendant established a non-discriminatory reason for the adverse employment action taken against him. It may be more legally sound to say that no reasonable jury could find that race was a motivating factor in defendant's employment decision, but again, the change in syntax does not get plaintiff to where he wants to go.

---

[12] As articulated by the magistrate judge, plaintiff has failed to establish his failure-to-promote claim under the burden-shifting framework for the same reasons. In addition to the magistrate judge's finding, this court finds that plaintiff has failed even to establish a prima facie case of race discrimination because, for the same reasons as those stated above, he has failed to demonstrate that he was denied the promotion under circumstances giving rise to an inference of unlawful discrimination. However, even if it could be said that a prima facie case had been stated, plaintiff could not prevail because defendant articulated a legitimate, nondiscriminatory reason for not promoting plaintiff, and plaintiff has come forward with insufficient evidence to demonstrate that defendant's proffered reason was a pretext for discrimination on the part of the relevant decision-makers.

20

### V.   Conclusion

It is therefore, **ORDERED**, for the foregoing reasons, that defendants' motion for summary judgment is **GRANTED** and plaintiff's Complaint **DISMISSED** in its entirety.

**AND IT IS SO ORDERED**.

_____
**David C. Norton**
**United States District Judge**

**August 29, 2005**
**Charleston, South Carolina**

21